**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jackie Chagolla,<br><br>    Plaintiff,<br><br>v.<br><br>Liz Vullo, Jessica Solis, Patricia Ward, and Robert Holya,<br><br>    Defendants. | No. CV17-01811-PHX-DGC<br><br>**ORDER** |

Plaintiff Jackie Chagolla alleges constitutional violations surrounding the removal of her minor children, B.C. and P.C. *See* Doc. 1-1 at 2. Defendants separately move for summary judgment. Docs. 104, 111. The motions are fully briefed, and oral argument has not been requested. Docs. 115-118. The Court will grant both motions.[1]

**I.    Background.**

Defendants moved for summary judgment in April and May of this year. Docs. 104, 111. Although Plaintiff has responded, she did not comply with Local Rule of Civil Procedure 56.1. Despite being warned to do so, Plaintiff has not filed a separate statement of facts with numbered paragraphs corresponding to Defendants' separate statement of facts. *See* Doc. 108 at 2. The Court informed Plaintiff of her burden:

> [Y]ou must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e) of the

---
[1] This case was recently transferred to the undersigned judge with the motions already pending.

> Federal Rules of Civil Procedure, that contradict the facts set forth in the declarations and documents filed by Defendant(s), and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.

*Id.* Despite reiterating many of the arguments originally made in her complaint, Plaintiff provides no declarations, depositions, answers to interrogatories, or authenticated documents as allowed by Rule 56(e). *See* Docs. 115, 117. Nevertheless, the Court will consider the arguments Plaintiff has provided and will address the motions on the merits. The following facts state the parties' respective positions.

On July 2, 2015, Tempe Police officers made contact with Plaintiff's minor daughters, B.C. and P.C. Doc. 104 at 1-2. B.C. and P.C. informed the officers that their father, Robert Chagolla, regularly abused them and that Plaintiff had ignored the abuse. *Id.* at 2. In response, the Tempe Police Department ("Tempe PD") contacted the Arizona Department of Child Safety ("DCS"). *Id.* On July 6, 2015, DCS case worker Jessica Solis interviewed Plaintiff, B.C., P.C., and Robert Chagolla. *Id.* On that same day, the Tempe PD opened an investigation into allegations of the physical and sexual abuse of B.C. and P.C. by Robert Chagolla. Doc. 104 at 2. Following the interviews, Solis determined that B.C. and P.C. needed to be removed from the Chagolla home during the investigation into the alleged abuse. Docs. 104 at 2, 111 at 2.

Rather than having B.C. and P.C. live in a group home during the investigation, Plaintiff asked Liz Vullo, a family friend, if they could live with her. Doc. 111 at 2. Vullo agreed and thereafter maintained custody of B.C. and P.C. for six months. *Id.* Vullo spoke with a detective from the Tempe PD and later with a representative from La Frontera, a mental health service, about B.C. and P.C. *Id.* at 3. Vullo claims that "she spoke truthfully" to the representative from La Frontera, which Plaintiff disputes. *See* Docs. 111 at 3, 117 at 1-2. Vullo also maintains – and Plaintiff disputes – that she never received any mail addressed to Plaintiff and that she did not publicly disclose any information about Plaintiff. Docs. 111 at 3, 117 at 2-3.

Plaintiff now asserts constitutional claims against three state defendants and Vullo. *See* Doc. 71.

## II. Summary Judgment Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides:

> If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it[.]

Fed. R. Civ. P. 56(e)(3). Thus, a party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986) (emphasis added); *see* LRCiv 56.1(b) (requiring the party opposing summary judgment to present evidence that establishes a genuine issue of material fact or otherwise precludes judgment in favor of the moving party).

## III. State Defendants' Motion.

### A. Wrongful Removal Claim.

Plaintiff argues that her constitutional right to parent her children was violated when Solis removed B.C. and P.C. from her custody without a court order and on the basis of "untrue information." Doc. 71 at 1. Plaintiff alleges that Solis "stated that she would do whatever it took to make sure that P.C. and B.C. never returned to [her family] again," and that this violated the Due Process Clause of the Fourteenth Amendment by depriving her of a continued relationship with her children. *Id.* at 1-2. Solis – a state employee –

contends that this claim fails because she is entitled to qualified immunity. Doc. 104 at 3. The Court agrees.

"Government officials are entitled to qualified immunity with respect to discretionary functions performed in their official capacities." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017). The Supreme Court has established a two-step inquiry for resolving a qualified immunity defense: the constitutional inquiry and the qualified immunity inquiry. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). The first step asks whether, taken in the light most favorable to the plaintiff, the facts show that the officials' conduct violated a constitutional right. *Id.* at 201. The second step asks whether the right was clearly established at the time of the violation. *Id.*

Solis is entitled to qualified immunity under the first step because – even when taken in the light most favorable to Plaintiff – the facts show that she did not violate Plaintiff's constitutional rights. "Parents and children have a well-elaborated constitutional right to live together without governmental interference." *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000). While parents have a Fourteenth Amendment right to the care, custody, and control of their children, it is not absolute. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *see Mueller v. Auker*, 700 F.3d 1180, 1186 (9th Cir. 2012) (holding that a parent's "rights must bow to other countervailing interests and rights, such as the basic independent life and liberty rights of the child and of the State acting as *parens patriae*[.]"); *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981) (holding that the state "has an urgent interest in the welfare of the child"). Officials violate parental rights if they remove a child from the home absent "information at the time of the seizure that establishes 'reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury.'" *Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1106 (9th Cir. 2001).

Solis did not violate Plaintiff's constitutional rights because, at the time of the removal, she had specific, articulable evidence that provided reasonable cause to believe that B.C. and P.C. were in imminent danger of abuse. *Croft v. Westmoreland Cty. Children*

*and Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997); *see Ram v. Rubin*, 118 F.3d 1306, 1311 (9th Cir. 1997) ("[S]erious allegations of abuse which are investigated and corroborated usually gives rise to a reasonable inference of imminent danger."). In their interview with Solis, B.C. and P.C. disclosed that their father had physically and verbally abused them prior to them running away and that Plaintiff had ignored the abuse. Doc. 105-3 ¶ 5. B.C. further disclosed that her father had recently physically assaulted her because she attempted to sneak out of the home the same day they ran away. *Id.* ¶ 7. Based on these allegations, Solis determined that it was necessary for DCS to take temporary custody of B.C. and P.C. to ensure their safety. *Id.* ¶ 9. Beyond a conclusory statement that Solis's determination was based on untrue information, Plaintiff has presented no evidence from which a jury reasonably could find that Solis did not have reasonable cause to remove B.C. and P.C.

Because Plaintiff's constitutional rights were not violated, the Court need not address the second step of the qualified immunity analysis. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Court will grant summary judgment on Plaintiff's wrongful removal claim.

### B. Fraud and Defamation Claims.

Plaintiff alleges a Fourteenth Amendment violation because the State Defendants allegedly reported false information to juvenile court regarding the existence of a sexual abuse investigation into Robert. Doc. 71 ¶¶ 6, 9-12. The State Defendants argue this claim fails because the Tempe PD did investigate allegations of sexual abuse during the relevant time frame. Doc. 104 at 7.

The evidence Defendants have presented is clear: the Tempe PD Special Victims Unit opened an investigation into the potential abuse of B.C. and P.C. by Robert (Doc. 105 ¶ 17); this investigation included specific allegations of physical and sexual abuse (*id.* ¶ 19); and the investigation was deemed inactive on September 7, 2015 (*id.* ¶ 22).[2] Aside from unsupported statements regarding the presentation of false

---

[2] In a separate filing, Plaintiff alleges that a statement by Detective Erik Hernandez of the Tempe Police Department that "the case was deemed inactive on September 7, 2015"

- 5 -

information, Plaintiff has presented no evidence to indicate that State Defendants committed fraud by reporting the sexual abuse investigation to the juvenile court. *See* Doc. 115 at 7. Plaintiff does not indicate how the disclosure of these facts by Solis, Ward, and Holya to juvenile court rises to the level of fraud or defamation. *See Matsushita*, 475 U.S. at 586 n.11 (holding that the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial"). The Court will grant summary judgment on these claims.

**C. Other Claims.**

Plaintiff also claims violations of the Fourteenth Amendment because (1) Solis interviewed other children residing with Plaintiff and did not include that information in her report to juvenile court, (2) Solis spoke to Vullo about the sexual abuse investigation, (3) Solis blocked an independent reviewer from speaking to anyone other than Vullo, B.C., or P.C., and (4) DCS failed to provide medical care for B.C. and P.C. Doc. 71 ¶¶ 3-5, 14. Defendants argue that, as a matter of law, these allegations do not rise to the level of Fourteenth Amendment violations.

The first three allegations are related to the manner in which Solis conducted the DCS investigation. As mentioned, the state "has an urgent interest in the welfare of the child[.]" *Lassiter*, 452 U.S. at 27. And while there is an established right to family integrity, there is no "constitutional right to be free from child abuse investigations." *Watterson v. Page*, 987 F.2d 1, 8 (1st Cir. 1993) (citing *Stanley v. Illinois.*, 405 U.S. 645, 649 (1972)). In order to rise to the level of a Fourteenth Amendment violation, official conduct must "shock the conscience." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). An official's conduct shocks the conscience when he or she acts with "deliberate indifference," which means "conscious or reckless disregard of the consequences of one's acts or omissions." *Gantt v. City of Los Angeles*, 717 F.3d 702, 708

---

is false. Doc. 114 ¶ 3. In support, Plaintiff cites a letter from Detective Hernandez, dated August 19, 2015, informing her that the case was inactive. But the investigation was in fact officially deemed inactive on September 7, 2015. *See* Doc. 105-1 at 14. Regardless, Plaintiff has failed to identify any other facts or legal authority indicating how her Fourteenth Amendment rights were violated here.

(9th Cir. 2013). Aside from conclusory statements implying disagreement with the manner of the investigation, Plaintiff provides no facts suggesting that Solis's conduct shocks the conscience. *Gantt*, 717 F.3d at 708. The Court will grant summary judgment on these claims.

Plaintiff also argues that DCS failed to provide medical care for B.C. and P.C. Doc. 71 ¶ 14. The right to family association includes the rights of parents to make important medical decisions for their children and of children to have those decisions made by their parents rather than the state. *See Parham v. J.R.*, 442 U.S. 584, 602, (1979) (holding that it is in the interest of the parents and children that parents have ultimate authority to make medical decisions for their children unless "neutral fact finder" determines, through a due process hearing, that parent is not acting in the child's best interests). But Plaintiff's allegation is directed at DCS, which is not a party to this case, and its alleged inaction is unrelated to the named Defendants here. *See* Doc. 71 at 8. The Court will grant summary judgment on these claims.

**IV.    Defendant Vullo's Motion.**

Plaintiff alleges Vullo violated the Fourteenth Amendment because she (1) had a conversation with Solis which "may have included an allegation of a police sexual abuse investigation" (Doc. 71 ¶ 4), (2) stated falsehoods to an independent investigator and prevented that investigator from speaking to anyone else but herself or B.C. and P.C. (*id.* ¶ 5), and (3) either destroyed or did not return mail addressed to Plaintiff that had been inadvertently sent to Vullo (*id.* ¶ 7).

The Fourteenth Amendment applies to state actors, not private parties. *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982) (citations omitted). To determine whether a person is a state actor, the Ninth Circuit recognizes four tests: (1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (quoting *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835-36 (9th Cir. 1999)). "Satisfaction of any one test is sufficient to

find state action, so long as no countervailing factor exists." *Id.* (quoting *Lee v. Katz*, 276 F.3d 550, 554 (9th Cir. 2002)).

Plaintiff provides no evidence that would support a conclusion that Vullo was a state actor. First, Vullo is not a state actor under the public function test. "Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Lee*, 276 F.3d at 554–55 (internal quotation marks omitted). The public function test is satisfied only on a showing that the function at issue is "both traditionally and exclusively governmental." *Id.* at 555. Vullo's custody of Plaintiff's children is not "traditionally and exclusively governmental." *Id.* In fact, this Circuit has held that even a court-appointed guardian of a minor does not have powers that are governmental in nature. *See Kirtley*, 326 F.3d at 1096. This test is not satisfied.

Under the joint action test, courts consider whether "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity." *Id.* at 1093. A private party must be a "willful participant," whose actions are "inextricably intertwined" with those of the government. *Brunette v. Humane Soc'y of Venura Cty.*, 294 F.3d 1205, 1211 (9th Cir. 2002). The joint action is test is thus not satisfied where, as here, a guardian takes custody of a child. *See Kirtley*, 326 F.3d at 1093-94.

Nor can Plaintiff satisfy the governmental compulsion test. This test considers whether the coercive influence or "significant encouragement" of the state effectively converts a private action into a government actor. *Id.* at 1094. As a temporary guardian, Vullo was not under such government compulsion that she was required to act on behalf of the state; rather – as indicated by the interviews she gave to DCS, Tempe PD, and La Frontera – her role was merely to ensure the safety of the children and to report facts to juvenile court. *See id.*

Finally, the nexus test asks whether "there is a such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that

of the State itself." *Id.* at 1095 (citations omitted). Plaintiff argues that Vullo's decision to take custody of B.C. and P.C. created a "verbal contractual agreement" with the state which made her its agent. But Plaintiff does not cite, and the Court has not found, any authority for this argument. What is more, Vullo volunteered to care for B.C. and P.C. *after* the decision to remove B.C. and P.C. had been made. Vullo could have refused to take in Plaintiff's children, with no effect on the State's decision to remove them from the Chagolla home. Vullo's behavior cannot "be fairly treated as that of the State itself." *Id.*

Aside from claiming that Vullo is an agent of the state because she had a "verbal contractual agreement" with DCS, Plaintiff provides no facts or legal authority indicating that temporary guardians are state actors for purposes of constitutional claims.[3] The law is clearly to the contrary. *See Kirtley*, 326 F.3d at 1096. The Court will grant summary judgment on Plaintiff's claims against Vullo.

**IT IS ORDERED:**

1. Defendants' motions for summary judgment (Docs. 104, 111) are **granted**.
2. The Clerk is directed to terminate this action and enter judgment.

Dated this 16th day of December, 2019.

David G. Campbell
Senior United States District Judge

---

[3] Plaintiff also alleges a § 1983 violation for defamation based on her belief that Vullo published information about Plaintiff's court dealings at Plaintiff's church, school, and neighborhood. Doc. 71 ¶¶ 7-8. Because Vullo is not a state actor, this claim also fails.

- 9 -